Rogers v. Heads Iron Foundry.

JAMES H. ROGERS V. HEADS IRON FOUNDRY ET AL.

FILED MARCH 17, 1897.   No. 7077.

| | |
|---|---|
| 51 | 39 |
| 52 | 177 |
| 51 | 39 |
| f58 | 677 |
| f58 | 717 |

Chattel Mortgages: REGISTRATION: DELIVERY. A chattel mortgage delivered by the mortgagor unconditionally to an unauthorized third person, by whom, under the directions of the mortgagor, it was

Rogers v. Heads Iron Foundry.

filed for record and subsequently accepted by the mortgagee, takes effect, as between the mortgagor and mortgagee, from the time of the first delivery; but not so as to persons who have acquired title to, an interest in, or a lien upon, the property, before the actual acceptance by the mortgagee.

ERROR from the district court of Dodge county. Tried below before MARSHALL, J. *Reversed.*

The opinion contains a statement of the case.

*Munger & Courtright,* for plaintiff in error:

The only question for determination is as to the priority of mortgage liens. The plaintiff claims the prior lien because of the fact that his lien attached before there was any valid delivery of the defendants' mortgages; and that, in this case, the subsequent acceptance by defendants of the mortgages previously delivered to a stranger for them did not relate back as against the intervening lien of the plaintiff. (*Masterson v. Cheek,* 23 Ill., 72; *Rivard v. Walker,* 39 Ill., 415; *Lessee of Mitchell v. Ryan,* 3 O. St., 387; *Jackson v. Bodle,* 20 Johns. [N. Y.], 187; *Bullitt v. Taylor,* 34 Miss., 741; *Boardman v. Dean,* 34 Pa. St., 252; *Wilsey v. Dennis,* 44 Barb. [N. Y.], 359; *Younge v. Guilbeau,* 3 Wall. [U. S.], 641; *Tuttle v. Turner,* 28 Tex., 759; *Bell v. Farmers Bank of Kentucky,* 11 Bush [Ky.], 34; *Hulick v. Scovil,* 4 Gilm. [Ill.], 159; *Welch v. Sackett,* 12 Wis., 265; *Bowman v. Griffith,* 35 Neb., 365; *Townson v. Tickell,* 3 B. & Ald. [Eng.], 31; *Jackson v. Phipps,* 12 Johns. [N. Y.], 422; *Foster v. Beardsley Scythe Co.,* 47 Barb. [N. Y.], 513; *Woodbury v. Fisher,* 20 Ind., 387; *Johnson v. Farley,* 45 N. H., 505; *Parmelee v. Simpson,* 5 Wall. [U. S.], 86; *Renfro v. Harrison,* 10 Mo., 411; *Hibberd v. Smith,* 67 Cal., 547; *Pierce v. Hall,* 41 Barb. [N. Y.], 142; *Kingsbury v. Burnside,* 58 Ill., 310; *Van Court v. Moore,* 26 Mo., 100; *Derry Bank v. Webster,* 44 N. H., 264; *Oxnard v. Blake,* 45 Me., 602; *Day v. Griffith,* 15 Ia., 104; *Denton v. Perry,* 5 Vt., 382; *McPherson v. Featherstone,* 37 Wis., 632; *Samson v. Thornton,* 44 Mass., 275; *Goodsell v. Stinson,* 7 Blackf.

[Ind.], 437; *McCutchin v. Platt*, 22 Wis., 561; *Cravens v. Rossiter*, 22 S. W. Rep. [Mo.], 736; *Deere v. Nelson*, 34 N. W. Rep. [Ia.], 809; *Cobb v. Chase*, 54 Ia., 253.)

*Frick & Dolezal, contra:*

The delivery of the mortgages to defendants was such as to give them a lien upon the property superior to that of plaintiff. (*Lessee of Mitchell v. Ryan*, 3 O. St., 377; *Jones v. Swayze*, 42 N. J. Law, 279; *Merrills v. Swift*, 18 Conn., 257; *First Nat. Bank, Emporia, v. Ridenour*, 27 Pac. Rep. [Kan.], 150; *Ensworth v. King*, 50 Mo., 477; *Ferguson v. Miles*, 3 Gilm. [Ill.], 358; *Thompson v. Candor*, 60 Ill., 244; *Bryan v. Wash*, 2 Gilm. [Ill.], 565; Devlin, Deeds, secs. 287-289 *et seq;* Jones, Real Estate Mortgages [2d ed.], sec. 540.)

NORVAL, J.

This proceeding was instituted in the court below to determine the priority of liens of certain chattel mortgages executed in the firm name of Nesbit & Rogers. The controversy was submitted, and determined by the court adversely to the plaintiff, upon a written stipulation of facts. He prosecutes error.

The facts, so far as they are necessary to an understanding of the question involved, are briefly these: On and prior to the 6th day of February, 1894, Fred L. Nesbit and William E. Rogers were engaged in the mercantile business in the city of Fremont, under the name and style of Nesbit & Rogers; that on said date, said firm being insolvent and unable to pay its debts, it was mutually agreed between the partners to discontinue said business and to turn over the firm assets to its creditors, and each partner for the firm, but without the knowledge of his copartner, undertook to secure such creditors as he thought best to prefer; that on said 6th day of February the said Fred L. Nesbit, in the name of the firm, executed chattel mortgages to the Heads Iron Foundry, Great

Western Stove Company, and Estate of P. D. Beckwith, for the several amounts then actually due and payable to them, upon the merchandise owned by said Nesbit & Rogers, and delivered the said chattel mortgages to J. E. Frick for the use and benefit of the said mortgagees, respectively, and the said Nesbit intended to, and thereby did, part with all right, dominion, and control over, or with reference to, every one of said mortgages, and requested said Frick to file the same for record, who immediately deposited the same in the office of the county clerk of Dodge county, at not later than 3:33 P. M. of said day, and paid the clerk the legal fees for filing and indexing the same; that said Frick at the time said mortgages were delivered to him for the use of said mortgagees did not have authority from said creditors to receive said mortgages, but assumed to act for them generally as an attorney for the purpose of protecting their claims against Nesbit & Rogers, and had no authority to represent the mortgagees until the receipt from them of the telegrams hereafter mentioned; that at 5:04 P. M. of said 6th day of February the said Frick caused to be sent to each of said several mortgagees, all of whom were non-residents of the state, a telegram apprising each of the failure of Nesbit & Rogers, and what had been done, and an answer thereto was received by said Frick early the next morning from each of said mortgagees assenting to and ratifying his action in the premises; that on the said 6th day of February the said William E. Rogers, in the name of, and acting for, said firm of Nesbit & Rogers, made and delivered to the plaintiff, James H. Rogers, a chattel mortgage to secure the payment of a *bona fide* indebtedness due him from said firm, covering the same stock and merchandise included in the said mortgages heretofore mentioned; that plaintiff filed his said mortgage in the office of the county clerk of Dodge county at 4 o'clock P. M. of the said 6th day of February; that immediately thereafter plaintiff, by his attorney, W. J. Courtright, took possession of the mort-

gaged chattels under and by virtue of his said mortgage, and closed the store of said firm; that plaintiff subsequently ascertained for the first time the existence of the other mortgages upon the property; that at 5:30 P. M. of said day said J. E. Frick, for and on behalf of the said Heads Iron Foundry, Great Western Stove Company, and Estate of P. D. Beckwith, demanded of the said Courtright the possession of the goods mortgaged to them, which demand was at first refused, but subsequently, at about 7 o'clock P. M., was complied with, by said Courtright turning over the possession of the goods in controversy to said Frick, who has ever since and now holds the same under and by virtue of said mortgages; that said plaintiff and his attorney, W. J. Courtright, at the time the possession of the property was delivered to said Frick, each acted in full belief that said Frick was at the time of the filing of the mortgages to the Heads Iron Foundry, Great Western Stove Company, and Estate of P. D. Beckwith, respectively, the duly authorized attorney for each and all of them, and that the mortgages to said mortgagees had been actually delivered to and accepted by their duly constituted representatives, and that the several mortgagees, prior to the giving of the several mortgages mentioned, at various times demanded payment of their claims from Nesbit & Rogers, and were anxious and desirous of obtaining the money owing to them by said firm.

The question arising upon the foregoing facts is whether the defendants or the plaintiff acquired the first or superior lien upon the mortgaged chattels. It is disclosed that the defendants' mortgages were given and placed upon record before the making, delivering, and filing for record of plaintiff's mortgage, from which the defendants claim the paramount lien; while upon the other hand the plaintiff confidently asserts that he has the superior lien upon the property, because it attached before there had been a legal delivery and acceptance of

the defendants' mortgages. None of the mortgages were delivered to the defendants, or either of them, in person at or prior to the time of the depositing of the same with the registering officer, or to any one authorized by the mortgagees to represent them. The defendants were not aware that the mortgagors contemplated or were giving mortgages to their creditors. There can be no doubt that the delivery and acceptance of a mortgage are essential to its validity. Such an instrument, like a deed, becomes effective only from its delivery. The proposition is too plain to require the citation of authorities to sustain it. Delivery may be made to the mortgagee himself, or to some one authorized to receive it for him, or to a stranger for the use and benefit of the mortgagee, without the latter's authority, under certain circumstances, as where the mortgagee is under some legal disability, as in the case of a minor or an insane person. Thus, in *Brown v. Westerfield*, 47 Neb., 399, a conveyance to a minor was upheld where the grantor delivered the deed to a stranger unconditionally for the grantee, and no control over the instrument was reserved in the grantor. Doubtless, the delivery of a mortgage to a stranger will suffice, if the mortgagee subsequently assents to or ratifies the act. In the case at bar there is no pretense that the defendants' mortgages were delivered to any one of the mortgagees, or to one authorized to act for them in accepting a delivery of the instruments, but they rely upon the delivery of the mortgages to Mr. Frick, his depositing of them in the recorder's office, and the subsequent acceptance of the instruments by the mortgagees. Defendants' attorneys insist, *arguendo*, that the presumption of law arising from these facts is that the mortgagees accepted the mortgages. This court has held that where a deed beneficial to the grantee is voluntarily executed and placed upon record by the grantor, the acceptance of the grantee will be presumed. (*Bowman v. Griffith*, 35 Neb., 361; *Issitt v. Dewey*, 47 Neb., 196.) And upon principle the delivery of a mortgage by the mortgagor, or by his direction, as in

the case at bar, for record, is sufficient, in the absence of proof to the contrary, to justify a finding of its delivery by the mortgagor and acceptance by the mortgagee. But the presumption of delivery and acceptance is not a conclusive one, but is *prima facie* alone. It may be shown, if such be the fact, that the mortgagee never accepted the instrument, but rejected the same when apprised of its existence. (*Jackson v. Phipps*, 12 Johns. [N. Y.], 418; *Wilsey v. Dennis*, 44 Barb. [N. Y.], 354; *Foster v. Beardsley Scythe Co.*, 47 Barb. [N. Y.], 505; *Young v. Guilbeau*, 70 U. S., 636; *Tuttle v. Turner*, 28 Tex., 760.) Possibly upon the delivery of a mortgage to a stranger for the use and benefit of the mortgagee, but without authority from him to receive it, acceptance of the mortgage may be presumed, where the mortgagor has parted entirely with all the control over the instrument. There are authorities which so hold, but even in such case the presumption of acceptance as of the date of the delivery to the third person may be rebutted. In the case in hand, the acceptance of the mortgages by the defendants, or rather their ratification of the action of Mr. Frick in receiving the instruments for and in their behalf, was not until after the plaintiff's mortgage was executed, delivered, filed for record, and he had taken possession of the property thereunder. The defendants insist that the acceptance of the mortgages by them related back to the time of the delivery to Mr. Frick. Such, unquestionably, is the rule as between the mortgagor and mortgagee, but it does not obtain where an innocent third party has, between the date of the delivery and the acceptance, acquired rights to the mortgaged chattels. The doctrine of relation cannot be invoked to the injury of the third persons. Their rights cannot be destroyed by a fiction of the law. The correct rule is laid down in Jones, Chattel Mortgage, sec. 104, in the language following: "A mortgage executed by a debtor to his creditor without the knowledge of the latter, and without authority from him, and delivered to a stranger or to the mortgagor's attorney for his use, does

not vest the title to the property in the mortgagee as of the time of such delivery, as between him and a creditor of the mortgagor who has acquired an interest in it by attachment or levy of execution between the time of such delivery and the mortgagee's acceptance of the mortgage after receiving notice of it." The same doctrine, in somewhat different language, is stated in Herman, Chattel Mortgages, sec. 168, and Boone, Mortgages, sec. 238.

The case of *Bell v. Farmers Bank of Kentucky*, 11 Bush [Ky.], 34, was a controversy between attaching creditors and a mortgagee of real estate. The mortgage was acknowledged, delivered to an unauthorized third person, and placed on record without the knowledge of the mortgagee. Before he was apprised of the execution and registry of the mortgage, and prior to the time he accepted or could have accepted the mortgage, the attachments were levied upon the property and the attachment liens created. The court ruled that the attachments were superior liens to that of the mortgage, and in passing upon the question said: "A deed delivered to the registering officer or to an unauthorized third person, and subsequently accepted by the grantee, will take effect as between the grantor and the grantee from the time of the first delivery, and in such cases volunteers claiming under and through the grantor and ordinary creditors who have acquired no lien upon nor interest in the estates conveyed are entitled to no greater consideration than the grantor. Yet, until the grantee is informed of the execution of the deed and does some act equivalent to an acceptance of it, it is manifest that he may refuse to accept it, notwithstanding the fact that by a fiction of law the presumption of an actual acceptance had all the while existed for his benefit as against the grantor, his heirs, devisees, and ordinary creditors. But this fiction will not be allowed to prevail to the prejudice of persons who have acquired title to, an interest in, or a lien upon the property before the date of the actual acceptance. As in the case of an escrow, whenever it becomes necessary for the purposes

of justice that the true time of the acceptance of a deed so delivered shall be ascertained, the legal fiction will be disregarded, and the intervening claimant or lien-holder allowed to show the actual facts of the transaction."

In *Goodsell v. Stinson*, 7 Blackf. [Ind.], 437, a real estate mortgage executed by F. L. Goodsell to Peter Goodsell to secure a *bona fide* debt, in the absence and without the knowledge of the latter, was delivered by the mortgagor to the recorder of the proper county for record. Subsequently, but before the mortgagee was informed what had been done and he assented to the mortgage, one Stinson obtained a judgment against the mortgagor. It was ruled that the judgment was entitled to the preference. The court in delivering the opinion observed: "The delivery of a deed is an essential requisite to its validity, and it is from the delivery that the deed takes effect. A deed may be delivered to a third person, even a stranger, for the benefit of the grantee, and if he afterwards assent to the act, the deed will take effect from the date of its delivery, unless the rights of the third persons should be affected by it. In that event the doctrine of relation would not apply, for it is a general rule that it shall not be permitted to apply so as to do wrong to strangers; as between the parties to the deed, it may be adopted for the advancement of justice." The same doctrine was held and applied in *Woodbury v. Fisher*, 20 Ind., 387; *Johnson v. Farley*, 45 N. H., 505; *Derry Bank v. Webster*, 44 N. H., 264.

In the syllabus to *Hibberd v. Smith*, 67 Cal.,547, it is said: "Where a deed presumptively beneficial to the grantee is delivered to a third person for his use, without his knowledge or prior authorization, the subsequent assent of the grantee to the delivery will not operate to defeat the lien of a judgment creditor of the grantor which attached to the premises sought to be conveyed after the date of the delivery, and before the assent of the grantee."

In *Day v. Griffith*, 15 Ia., 104, it was decided that the delivery of a deed by a grantor to the recorder for the use

and benefit of the grantee, but without his knowledge or consent, and without any previous agreement between them, is not such a delivery as will defeat the rights of an attaching creditor acquired prior to the assent of the grantee to such delivery.   To the same effect are *Deere v. Nelson*, 34 N. W. Rep. [Ia.], 809; *Denton v. Perry*, 5 Vt., 382; *McPherson v. Featherstone*, 37 Wis., 632; *Samson v. Thornton*, 3 Met. [Mass.], 275; *Cravens v. Rossiter*, 22 S. W. Rep. [Mo.], 736.

The case of *McCutchin v. Platt*, 22 Wis., 561, was replevin to recover possession of property seized by the defendant, as sheriff, under an attachment against William H. and James F. Winser.   The Winsers executed a bill of sale of the property to plaintiff without his knowledge and deposited the same in the post-office, directed to him, before the levy of the attachment.   Plaintiff did not receive the bill of sale until after such levy.   It was held that the attachment had priority.

It has been frequently decided by the courts that a chattel mortgage executed in the absence and without the knowledge of the mortgagee, and delivered to a third person for his use, or deposited by the mortgagor with the proper registering officer for record is inoperative as to another creditor of the mortgagor who acquired an interest in the property by attachment or otherwise, subsequent to the giving of the mortgage, but prior to the time the mortgagee received notice of and ratified the instrument.   Of the cases so holding are *Wadsworth v. Barlow*, 68 Ia., 599; *National State Bank of Burlington v. Morse*, 73 Ia., 174; *Wallis v. Taylor*, 67 Tex., 431; *Oxnard v. Blake*, 45 Me., 602; *McCourt v. Myers*, 8 Wis., 91; *Miller v. Blinebury*, 21 Wis., 676; *Welch v. Sackett*, 12 Wis., 270.

Counsel for defendants have cited in their briefs several cases which are directly opposed to the doctrine last above stated, but we shall not attempt now a review of them.   That has been already admirably done in some of the foregoing authorities.   The ablest discussion of the subject which has come under the observation of the

writer is by Dixon, C. J., in his opinion in *Welch v. Sackett, supra*, from which the following excerpts are taken:

"All agree that it is necessary to the validity of every deed or conveyance that there be a grantee, who is not only willing, but who does in fact accept it. It is a contract, a parting with property on the part of the grantor and an acceptance of it by the grantee. Like every other contract, there must be a meeting of the minds of the contracting parties, the one to sell and convey and the other to purchase and receive, before the agreement is consummated. If there be anything in legal principles, or in common sense, it is an unpardonable absurdity to say that a contract can be completed in the absence and utter ignorance of one of the contracting parties; that he can or does, under such circumstances, assent to or agree to become bound by it. The idea that a contract could be thus made, and that title to property could pass into a party without his knowledge or consent, and out of him without any motion or act of his signifying his willingness, but merely by his refusal to receive it all, had its origin at a period in the history of the common law when the legal mind, instead of being governed in its conclusions by a steady application of the clear and rational principles of the law to plain matter of fact, and by arguments to be drawn therefrom, was too frequently influenced by mysterious and fanciful logic that depended for its support upon artfully devised fictions and falsehoods, which, for the most part, were as repugnant to reason as they were unnecessary to the proper administration of justice. The discovery that such things could be done is, I believe, attributable to the inventive skill of Justice Ventris, as exhibited in the case of *Thomson v. Leach*, 2 Vent. [Eng.], 198, decided about the year 1690; at least several courts and judges since that time, with many compliments, have agreed in giving him the credit of having proved something on this subject which none of them could understand. The substance of his proposition is that a deed of lands made to a party without his

8

knowledge or consent, and placed in the hands of a third person for his use, is a medium for the transmission of the title to the grantee, and takes effect so as to vest it in him the instant the deed is parted with by the grantor, and if the grantee, upon receiving knowledge of it, rejects it, such rejection has the effect of revesting the title in the grantor by a species of remitter.   *   *   *

"Assent or acceptance on the part of the grantee or other party to a deed, or other instrument, by means of which the title to property, whether real or personal, is to be transferred to him, or by which he is in any other manner to become bound, is a fact, the truth of which is to be established by competent evidence before such deed or other instrument can be adjudged to have a legal existence.   Like every other fact, it may be established by direct evidence, or its existence may be inferred or presumed from other facts already in proof.   But I deny that the existence of one fact is to be inferred or presumed from the existence of others, when the connection between the former and the latter is such that according to the course of nature it plainly appears that the former cannot exist.   In other words, I deny that the existence of any fact may be shown by proving others which conclusively show its non-existence, or that the legitimate mode of establishing the truth of a matter is by indubitably proving its falsehood.   Justice does not require, nor does the law tolerate such an absurdity.   The learned justice says that where a deed is executed by the grantor and delivered to a stranger for the use of the grantee, without the previous advice, direction, or authority of the grantee, and without his knowledge, the law will presume that the grantee assents to it the moment it is delivered to the stranger.   Assent is an act of the mind—that intelligent power in man by which he conceives, reasons, and judges, and of which it is a primary, invariable, and most familiar law that it cannot act with reference to external objects until, through the medium of the senses, it is impressed with or knows their existence.

Hence, without such impression or knowledge there can be no assent, no *actus contra actum;* and to presume it in opposition to the facts is to presume that which is impossible; which the law, the rules and precepts of which are in conformity with the unchanging truths of nature, will never do.   *   *   *

"The mistake of the learned justice consisted in his carrying the presumption of law so far as to say that it presumes that a person has consented to that of which he knows nothing, which is an impossibility; instead of saying what was more truly said by the more logical and cautious courts and judges of his time, and by Lord Ellenborough in *Stirling v. Vaughn,* 11 East, 623, namely, that, if nothing appears to the contrary, the law presumes that he will accept that which is for his benefit, when he is informed of it, which assent, in the absence of intervening rights or equities, will have relation back to the time of delivery for his use, and make his title good as from that date.   *   *   *

"All agree that neither the grantor nor the stranger who consents to receive and hold the deed can, by their acts, bind the grantee, and that the latter may, on receiving notice of it, repudiate it altogether.   If the title vests in the grantee at once it must, of course, vest according to the terms of the conveyance, and in the case of an absolute conveyance he would have an absolute title.   If, after delivery to the stranger, and before notice to the grantee, a creditor of the latter should fasten upon the property by execution or attachment, no reason can be given why he could not hold it.   If it is the property of the grantee it follows, as of course, that the creditor would have this right, and that he would at once acquire a lien to the extent of his demand.   Suppose, after this is done, that the grantee, on receiving notice, refuses to accept the conveyance, what becomes of the property?   Does the refusal unbind and set the property free from the seizure of the creditors, and remit the title at once back to the grantor?   Or does the intendment of Justice Ventris

step in, in behalf of the creditor as well, and say, because the grant is presumed beneficial to the grantee, and he might at some future period accept it, that therefore he shall be deemed to have accepted it before the seizure, and at a time when he was utterly ignorant of it, and thus enable the creditor to withhold the property from the grantor, by which means it would happen that, although it was neither bought nor sold, the grantor would, without consideration, lose it, and the grantee enjoy the full benefit of it on the same terms? Knowing of no rational or satisfactory answers which can be given to these and various similar questions which will readily suggest themselves to the reader, I leave them to be replied to by those who maintain that the title to property, real or personal, may, without words written or spoken or other act of transfer, be thus mysteriously passed and repassed between parties by contract. I deny that it may be. It seems to me very plain that it does not pass in fact until the grantee has actually consented to receive it; and, as of course, that it remains with the grantor, who is unable without such consent to vest it in the grantee. No other conclusion is consistent with the doctrine that a grant is a contract, and that the assent of the grantee is necessary to give validity."

The reasoning of the learned chief justice is unanswerable, and fully discloses the fallacy of the doctrine upon which the opposing authorities rest.

Although this opinion has now been extended to an unusual length, the importance of the question involved will justify a reference to *Parmelee v. Simpson*, 72 U. S., 81, a case which arose in Nebraska, and in some respects is like the one at bar. That was a suit brought in the district court of Douglas county by one Parmelee, for the foreclosure of a real estate mortgage executed by Megeath and Bovey on April 17, 1858, and duly recorded the same day. The defendant Simpson claimed under a deed from Bovey acknowledged and recorded by him on the 15th day of the same month. Simpson was wholly

ignorant of the existence of the deed until April 19, four days after its date, when Bovey pointed out the land to Simpson, stating that he had conveyed it to him in consideration of certain money previously obtained, and at the same time delivered the deed to Simpson. The district court held the mortgage was entitled to priority, and entered a decree of foreclosure. An appeal was prosecuted to the supreme court of the territory, where the cause was docketed as No. 131, and on July 25, 1864, the decree of the district court was reversed, although no report of the case is to be found in our official law reports. On appeal to the supreme court of the United States, the decree of the supreme court of the territory was reversed and the cause remanded with directions to enter an order affirming the decree of the district court. Mr. Justice Davis, in delivering the opinion of the court (72 U. S., 86), says: "And there is not a particle of evidence that any one was authorized to receive the deed for him. The placing the deed on record was Bovey's own act, and was done without the assent of Simpson. Under this state of facts there was manifestly no delivery. The execution and registration of a deed and delivery of it to the register for that purpose does not vest the title in the grantee. If Simpson had agreed to accept the deed in liquidation of his debt, and constituted the register his agent to receive it, then the delivery of the deed to the register would have been in legal contemplation a delivery to him. But it is said that he could ratify the acts of Bovey and the register. This is true, but he did not do this until after the execution and registration of the mortgage; and this ratification cannot relate back so as to cut out the mortgage. Simpson acquired no title until after the rights of the mortgagee had accrued, and he holds it incumbered with the lien of the mortgage." In pursuance of the mandate issued in said cause, the supreme court of this state, on February 5, 1868, affirmed the decree of the district court of Douglas county, thereby recognizing that the doctrine of relation will not be per-

mitted to operate against the rights and interests of any innocent third party, and that the law will not presume the acceptance of an instrument, although beneficial in character, where the transaction rebuts such presumption.

The stipulation of facts in this case shows that there had been no actual acceptance of the mortgages by the defendants when plaintiff's mortgage was delivered to and accepted by him; in fact, that they had no knowledge then of the existence of the mortgages and could not assent to the attempted securing of their claims. Had the execution of the mortgages, their delivery to Mr. Frick, and the depositing of them in the county clerk's office alone been established, the presumption of acceptance of the mortgages by the defendants from the date of such delivery would be indulged. But such presumption must yield when the facts disclose the contrary to be true; i. e., the defendants had assented to the giving of the security. To hold that the defendants have the prior and superior liens upon the property would be to make contracts for the parties, which the law does not do. It merely enforces those legally entered into. It is true defendants' mortgages were the first on record, but until acceptance by the mortgagees, the record was not effectual as notice against plaintiff. (*Dole v. Bodman*, 3 Met. [Mass.], 139.)

It is finally insisted that the defendants' mortgages have priority from the fact that plaintiff surrendered possession of the property to Mr. Frick, on the evening of the same day they were executed, for the use and benefit of the defendants. If the lien of plaintiff's mortgage first attached, as we have already shown, it was not lost or relinquished by the turning over of the property to Mr. Frick, no more than would a first mortgagee lose his lien by merely delivering the property to a subsequent mortgagee. If Mr. Frick could not accept the mortgages for the defendants, because not authorized by them so to do, it is very evident he could not lawfully demand for

and receive possession of the chattels on their behalf. The delivery of mortgaged property to a stranger by a mortgagee is not an abandonment of the lien of the mortgage. We are satisfied, upon reason as well as authority, that plaintiff's mortgage is the prior lien. The judgment of the district court is accordingly reversed and the cause remanded with instructions to render a judgment for plaintiff.

REVERSED.