FARMERS SAVINGS BANK OF WILLIAMSBURG et al., Appellants, v. WILLIAM CASH et al., Appellees.

**CHATTEL MORTGAGES:** Validity—Nonexecution of Note.   A non-
1  fraudulent chattel mortgage is not rendered invalid because of the nonexecution of the note described therein, when the debt secured is otherwise identified.

**CHATTEL MORTGAGES:** Execution—Delivery.   Sufficient delivery of
2  a chattel mortgage is shown by the fact that the mortgagor caused the instrument to be recorded, and that the mortgagee subsequently approved of such recording.

**CHATTEL MORTGAGES:** Acceptance—Sufficiency.   Evidence held to
3  show the acceptance of a chattel mortgage by a creditor secured thereby.

**CHATTEL MORTGAGES:** Construction—Acceptance—Effect.   Chattel
4  mortgage construed, and *held* that any one of several contemplated creditors might accept thereunder and take full security for his claim, even though other creditors refused to accept.

Headnote 1:  11 C. J. p. 475 (1926 Anno.)  Headnote 2:  11 C. J. pp. 488, 489.  Headnote 3:  11 C. J. p. 725.  Headnote 4:  11 C. J. p. 489.

*Appeal from Iowa District Court.*—R. G. POPHAM, Judge.

NOVEMBER 11, 1924.

REHEARING DENIED FEBRUARY 20, 1925.

ACTION in equity, to foreclose a chattel mortgage upon certain personal property.   Various defendants appeared, including the Conroy Savings Bank, and filed answers claiming a prior

lien on the personal property, under and by reason of a chattel trust mortgage executed by the debtor William Cash. All the creditors named in the trust chattel mortgage were made defendants in this action. The trust mortgage is prior in point of time to the plaintiffs' chattel mortgage. The trust mortgage was executed January 13, 1922, and plaintiffs' mortgage May 29, 1922. The trial court held that the Conroy Savings Bank had a prior lien, under the trust chattel mortgage, for the full amount of its claim, to that of the claim of plaintiffs, and rendered a decree so finding, and providing that the plaintiffs, before they could sell the property under their foreclosure, must pay the claim of the Conroy Savings Bank. The court found that none of the other defendants had accepted under the trust mortgage, and that it had not been delivered as to them, and that they were not, therefore, entitled to a lien thereunder. The decree also removed the prior trustee under the trust mortgage, and directed William Cash to appoint a successor, failing which, one would be appointed by the court, for the purpose of executing the trust imposed. Cash, protesting that he did so without waiving any rights, appointed Leasure, who accepted the trust in writing. Defendants do not appeal; so that the controversy is now between plaintiffs, appellants, on the one hand, and the Conroy Savings Bank, appellee, on the other. Plaintiffs alone appeal.—*Affirmed.*

*Walter M. Davis* and *W. E. Wallace,* for appellants.

*Havner, Flick & Powers* and *P. P. White,* for appellees.

PRESTON, J.—Appellees say that there is but one issue in the case, and state it substantially thus: Whether the trust chattel mortgage executed January 13, 1922, and recorded on the same day, which trust chattel mortgage was accepted by the Conroy Savings Bank March 18, 1922, is a lien upon the chattel property described in the trust mortgage, prior and superior to another chattel mortgage executed by the owner of such property on May 29, 1922. Appellants state the issues in this wise: Whether the trust chattel mortgage was valid, and whether it was delivered to or accepted by the Conroy Savings Bank un-

der its terms, and if so, the amount of its lien, and whether it was necessary for all the creditors named in the trust chattel mortgage, or a majority thereof, to accept, before said trust mortgage was valid. The last proposition involves, to some extent, a construction of the trust instruments.

On said January 13th, Cash executed the trust chattel mortgage known in the record as Exhibit 3, conveying to a trustee the property therein described, to secure his indebtedness, therein listed, to the creditors therein named. At that time, Cash was insolvent. At the same time, and as a part of the same transaction, Cash executed a trust real estate mortgage, known in the record as Exhibit 5, conveying the real estate to the same person, as trustee, securing the same creditors. The two instruments covered all the property then owned by the debtor, William Cash. The trust mortgage purports to secure something less than $80,000, and includes a large number of claims which are listed therein. Plaintiffs' mortgage purports to secure approximately $22,000 of claims against Cash. Some of these are the same persons, and, we take it, the same claims, as listed in the trust mortgage, and these are plaintiffs and appellants in this case. Among the claims listed in and secured by the trust mortgage is the claim of the appellee herein, the Conroy Savings Bank, in the sum of about $4,200. A like amount, based on the same indebtedness, was secured by the conveyance to the trustee of the real estate. At the time Exhibit 3 was executed, Cash and Mr. W. E. Wallace, attorney for Cash, were present, and no one else. Exhibits 3 and 5, also Exhibit 2, were drawn by Mr. Wallace and executed by Cash. Mr. Wallace subsequently represented all the plaintiffs in this case, and is himself one of the plaintiffs. Exhibits 3 and 5 were both taken by the trustee therein named and his partner, to the recorder's office, and by him filed for record. The chattel trust mortgage, Exhibit 3, was retained by the recorder, and the real estate trust mortgage was returned by the recorder to Mr. Wallace, who retained it until the trial of this case. The note therein described for $80,000 was not executed, and never has been. At the January, 1922, term of court in Iowa County, appellee Conroy Savings Bank had secured a judgment against Cash on the note which was secured by the trust chattel mort-

gage, and another note, and under said judgments execution had issued, and was levied upon certain collateral which had been pledged to secure their payment.

On March 18, 1922, appellee Conroy Savings Bank and William Cash and the person named as trustee, with W. E. Wallace, had a conference, which resulted in the execution of a written agreement on said date, known in the record as Exhibit 2, by which appellee claims that the trust mortgage was ratified and confirmed by the signature of Cash and the trustee, and that this was in consideration of the release of the execution issued by appellee, before referred to; and by this it is claimed by appellee that it accepted the terms of the trust mortgage. Subsequently, plaintiffs' chattel mortgage was executed, with notice, we think, through Wallace, representing plaintiffs, of the trust mortgages. There is testimony that the value of all of Cash's property on January 13, 1922, was approximately $12,000, or a little more. Mr. Cash formulated the plan of executing the trust mortgage. The list of his indebtedness as set out in Exhibit 3 is correct. There is also testimony that Mr. Cash attempted to treat all his creditors alike; to put them on the same basis. Mr. Wallace told the trustee, the day Exhibits 3 and 5 were executed, that in his opinion they were not good. No copies of Exhibit 3 were sent to the creditors. Mr. Cash did not talk with his creditors in regard to Exhibit 3, except to the cashier of the appellee bank.

The chattel property was not turned over to the trustee, but was retained by Cash, and some of it was sold. The trustee first named seems to have paid little attention to the matter, though it appears that there were some moneys deposited in the bank in the name of the trustee, and a few checks were drawn against this account. The trial court found, and properly so, we think, that Gallagher, the first trustee, accepted the trust and entered into the discharge of his duties as such, but that he had since abandoned the trust, and was no longer performing the duties, and because of the vacancy, a new trustee was appointed. Mr. Wallace also drew the plaintiffs' mortgage. Before doing so, he consulted all the creditors therein named, about the execution of the same, before it was executed by Cash.

Plaintiffs' mortgage is on the same property as that described in the trust mortgage.

The foregoing, though a synopsis only, is a statement of the essential facts in the record, except the exhibits.

Exhibit 3, the first chattel mortgage, provides, among other things: In consideration of the sum of $80,000, Cash and wife sell and convey to the trustee and his successors in office, certain described horses, cattle, hogs, automobile, threshing engine and machine, wagons and other farm machinery, ensilage, hay, corn, oats, and so on.

"To be void upon condition that the said Cash shall pay to the said trustee or his successors, his one promissory note, dated January 13, 1922, due on or before five years, for $80,000, eight per cent interest. Said note is given and said trust is created to secure the payment of the following described notes and accounts, to wit * * * Said trust is created and said note given, however, for the equal proportionate benefit and security of any and all the notes and accounts described herein without regard to their date, so that each note and account shall have, by virtue of this instrument, the same right and lien, except the notes given by the trustee for running expenses in caring for the property, taxes, interest on the first mortgage on the real estate given by mortgagors of even date herewith to secure the notes herein described. Should the holder of any note or open account, described herein, commence any action to enforce collection of the notes or account held by said holder, such holder shall forfeit all the lien hereby created in his favor, and any such holder commencing such proceeding shall have no right hereafter under this instrument. Or should any holder of note or account described herein refuse to immediately abandon proceedings heretofore commenced by such holder to enforce collection, then such holder shall immediately forfeit all the lien created hereby. * * * All payments made upon notes described herein shall be made to the trustee and the same divided between the several holders of notes and accounts in proportion to the amount due each holder. As this mortgage is made for a greater amount than the accounts listed, with interest, it is agreed that the trustee shall have authority, and he is empowered to borrow money in his name as trustee, in a sum not to exceed $5,000 at

any one time, to pay running expenses of the farm, living expenses of Cash and family, taxes, interest and premiums to be paid on the life insurance of Cash. Should he so borrow, the same shall be a first lien upon the property described herein and the real estate mortgage, ahead of the claims listed, to the extent of the loan.''

Trustee is to pay premiums on $20,000 insurance policy on the life of Cash, and distribution of the proceeds in case of his death is provided for. The instrument refers to the execution of the real estate mortgage of even date, to secure the $80,000 note, subject to the provisions and conditions of Exhibit 3; makes it a part of the same transaction. Should the trustee die, resign, or his office become vacant for any reason, Cash shall have the right to select his successor, who shall qualify by signing a written instrument agreeing to accept the trust. In default of any of the stipulations, the trustee may take possession of the property under the authority of the trust mortgage, sell the same, etc.

Exhibit 5, the real estate mortgage, duly recorded on the date of its execution, recites that it is in consideration of $80,000; conveys to the trustee certain described land; and is to be void upon condition that Cash and wife shall pay or cause to be paid to the trustee, $80,000, according to the tenor of the one promissory note, etc., the said note being due on or before five years from date.

Exhibit 2, an agreement dated March 18, 1922, signed by appellee Conroy Savings Bank, William Cash, and the person named as trustee, provides, in part, that first party, the Conroy Bank, shall withdraw the special execution levied upon the collateral notes which are described, and that the execution shall be returned unsatisfied; that certain of said collateral notes shall be retained by appellee, and the proceeds collected thereon, when received, shall be applied to the payment of the indebtedness for the payment for which they stood as security; and that, when the Conroy Savings Bank claim has been paid, such of the collateral notes, if any, as remain in the hands of appellee, shall be returned or paid, as the case may be, to the trustee for William Cash; that none of the collateral or proceeds shall be retained by appellee after the payment and satisfaction of the

notes and judgments for which the several collateral notes were given; that, in consideration of the foregoing, first party, appellee, shall be considered as one of the creditors and beneficiaries of and within the trust assignment made to the trustee by the said William Cash. It is further agreed that nothing in this agreement shall be a waiver on the part of first party, appellee, of any benefits they might have under said trust agreement, and that, by so accepting the benefits of said trust assignment or deed, first party shall waive none of its rights to the collateral.

1. The entire appeal is, as stated by appellants, centered upon the validity of the chattel trust mortgage, Exhibit 3, and particularly whether appellee bank had a lien on the personal

1. CHATTEL MORT-
GAGES: validity:
nonexecution of
note.

property therein described, superior to plaintiffs' chattel mortgage. It is first contended by appellants that the trust mortgage is invalid because of the failure of Cash to execute the $80,000 note therein referred to. The provision in the trust chattel mortgage more particularly relied upon by appellants in regard to this, is that it provides that, should the interest not be paid upon said note, as therein provided, the same, for said reason, shall not be foreclosed unless a majority in amount of all the creditors herein secured shall join in and sign a petition for the foreclosure of said mortgage. One of the contentions of appellee bank is that its claim is the only claim secured thereby, because none of the other claimants or creditors accepted the provisions of the instrument. Furthermore, this is not an action to foreclose that mortgage, and it was not foreclosed by the decree herein. In the decree plaintiffs were awarded judgments on their claims against Cash, and the decree found that said claims were secured by plaintiffs' chattel mortgage; found that the trust chattel mortgage of January 13th was a valid and binding mortgage in favor of the appellee Conroy Savings Bank, securing the payment of its note, and that it was paramount to any of the rights of the plaintiffs by virtue of their mortgage; decreed a foreclosure of plaintiffs' mortgage and the issuance of a special execution for the sale of the property therein described; and provided that plaintiffs should pay to the appellee Conroy Bank the amount of its note, or secure the same as provided by statute.

Since there was no foreclosure of Exhibit 3, the provision therein relied upon by appellants was not violated.

It is further contended, and cases are cited to sustain the proposition, that, if the mortgage is incomplete, and does not state the terms of the note, and incorporates only a part of the same in the mortgage by reference, the mortgage is not an enforcible mortgage unless the note is executed. To meet this, appellee contends that the existence of the debt which the mortgage is given to secure is the important thing, and that an erroneous description of the note or bond will not invalidate the mortgage. They rely on some of the cases cited by appellants, among them *Lierman v. O'Hara,* 153 Wis. 140 (140 N. W. 1057, 44 L. R. A. [N. S.] 1153). In that case it was held that a chattel mortgage purporting to secure payment of a promissory note is not invalid because the note was not signed, if the mortgage correctly describes the note except as to the signature, and states the amount of the debt and terms and conditions of payment. Others of appellants' cases are to the general effect that a mortgage is not security for bonds never issued, where the mortgage stipulated that the mortgagor would pay the principal and interest on all bonds duly issued, etc. It should be remembered that Exhibit 3 provides that the note is given and said trust created to secure the payment of certain described notes and accounts other than the $80,000 note,—among them, the note of appellee bank. In *Lee v. Fletcher,* 46 Minn. 49 (48 N. W. 456), it is held that the validity of a mortgage depends upon the existence of the debt it was given to secure, and may be valid without a note or bond which it purports to secure, and substantially describes a note or bond. The true state of the indebtedness need not be disclosed by the instrument, but, in cases free from fraud, may be shown by parol. There is no fraud shown in the instant case, and none is claimed, except that appellee Conroy Savings Bank claims that it would be a fraud to permit plaintiffs to come in ahead of it, when their claims were listed in Exhibit 3, and they had notice of the claim of appellee bank when they took their mortgage at a later date. We have held that the failure to specifically set out or describe the indebtedness sought to be secured does not, of necessity, render the mortgage of no effect as to creditors of the mortgagor. There must be

sufficient general description to embrace the demands and liabilities intended to be secured, and to put the person examining the record upon inquiry, etc. *Magirl v. Magirl*, 89 Iowa 342, 345; *Westgrove Sav. Bank v. Dunlavy*, 190 Iowa 1054, 1059. Some of the cases make a distinction between a mortgage which purports only to secure payment of a particular note and one which secures the debt evidenced by the note. *Brick v. Scott*, 47 Ind. 299. We think the mortgage was not invalid for this reason.

2. It is thought by appellants that there was never a delivery of Exhibit 3 by Cash to appellee Conroy Savings Bank, and that it was never delivered to anyone except to the recorder.

2. CHATTEL MORT-
GAGES: execu-
tion: delivery.

It being on record, a presumption of delivery arises. It appears without conflict that the instrument was executed by Cash, and that his attorney called the trustee's partner, a liveryman at Williamsburg, and asked him to take the envelope containing the trust mortgages to the recorder's office at Marengo. Roach, the partner, started; but he blew out a tire, and returned, and requested his partner, Gallagher, the trustee, to take the package to the recorder's office. Gallagher did so. Clearly, a delivery was intended by Cash, and there was a delivery. No particular form or ceremony is essential, to constitute delivery, nor is manual possession by the grantee necessary. The intent is important, and delivery for record, although not known by the grantee, is, if followed by his assent, good delivery. *Lee v. Fletcher*, supra; *Davis v. Hall*, 128 Iowa 647, 649; *Cobb v. Chase*, 54 Iowa 253. The appellee Conroy Savings Bank had knowledge of the execution of the trust mortgage and of the fact of the recording thereof and of its terms, prior to the execution of Exhibit 2, in March. This was before appellants' mortgage was executed.

3. It is next contended by appellants that the Conroy Savings Bank never legally accepted the trust chattel mortgage; that this was necessary; and that the agreement of March, Exhibit 2, was not an acceptance, because it does

3. CHATTEL MORT-
GAGES: accept-
ance: sufficiency.

not refer specifically to Exhibit 3, or if it refers to either of the trust mortgages, it does not state which one. The mortgages show without any question that they were executed as a part of the same transaction. Exhibit 2 was

executed by Cash, the trustee, and appellee bank. By it the
bank is recognized by both the others as one of the creditors and
beneficiaries of and within the trust agreement, and it further
provides for the acceptance of the benefits provided for under
said trust agreement by appellee bank. The acceptance included
both the chattel and the real estate trust mortgage. It appears
that there was no other trust agreement or trust mortgage. Ap-
pellant Wallace, for himself, and as attorney for the other appel-
lants, knew of and participated in the execution of all three in-
struments, including Exhibit 2.

It is further argued by appellants that there is a difference
between a trust assignment or trust deed and a chattel mortgage,
and that something else must have been referred to, because of
the fact that the words "trust assignment" and "trust agree-
ment" were used in Exhibit 2. If it be conceded that the parties
used the wrong words, or called the instruments by wrong names,
this would not alter their true character. Exhibit 3 is, in fact,
a contract and an agreement, and it seems to be conceded that
it is a trust chattel mortgage.

4. The next contention of appellants is that, before the
trust mortgage became binding as to any creditor, it was incum-
bent on the Conroy Savings Bank to prove that the same was ac-
cepted by all the creditors named in the trust
mortgage. We think it may safely be conceded
that it was Cash's purpose, in executing the
trust mortgages, to treat all his creditors alike; but he alone
could not bind them; neither could he compel them to accept his
scheme. They may have had other security, or for some other
reason may have preferred not to accept it. None of the others
did accept. It is true, as contended by appellants, that the in-
struments Exhibits 3 and 5 themselves do not, in so many words,
require an acceptance; but, as said, an acceptance was neces-
sary. Exhibit 3 itself contemplates that not all may accept, and
it provides that, in that case, they shall have no lien. Under
the circumstances, and after a reading of the instrument, we
think it was not necessary that all should accept before it would
be binding upon those who did accept. Appellee bank accepted.
In a sense, the agreement of March 18th was a new contract be-
tween Cash, his trustee, and appellee bank. The fact that the

4. CHATTEL MORT-
GAGES: con-
struction: ac-
ceptance: effect.

others did not accept, does not invalidate the mortgage as to this appellee bank. A mortgage may be good as to one creditor and invalid as to others. *Sloan v. Thomas Mfg. Co.*, 58 Neb. 713 (79 N. W. 728), and cases; *Rogers v. Heads Iron Foundry*, 51 Neb. 39 (70 N. W. 527).

5. Finally, it is argued briefly by appellants that, even if they are wrong in all the foregoing propositions, appellee is not entitled to have its lien established in the full amount of its claim, but only its pro-rata share, as provided by the terms of the trust mortgage; because the mortgage provides that the trust is created for the equal proportionate benefit and security of any and all the notes and accounts described in the agreement, and that payments made to the trustee should be divided between the several holders of the notes, in proportion to the amount due each holder. There might be force in this suggestion if the other creditors had accepted the trust arrangement, or if the first trustee had proceeded with the trust and carried it out by a sale of the property and collection of the proceeds. The others did not accept, and only $200 or $300 was received by the trustee.

Without further discussion, we are of opinion that the equities are with appellee Conroy Savings Bank, and that the decree of the trial court was right.—*Affirmed.*

ARTHUR, C. J., and FAVILLE and VERMILION, JJ., concur.