M. W. GRIBBEN, Appellee, v. H. O. CLEMENT and M. A. CLEMENT, Appellants.

**Suretyship:** INDEMNITY: EXTINGUISHMENT. No change in the form
1    of indebtedness originally secured by mortgage will operate to release the mortgage so long as the identity of the debt can be traced; so that where plaintiff became surety for defendant's debt, taking a mortgage to indemnify himself against loss, payment by defendant of his debt with money borrowed from another source with plaintiff as surety, did not operate to terminate the suretyship and extinguish the mortgage.

**Same:** ACTION OF SURETY: WHEN NOT PREMATURELY BROUGHT: LIMITA-
2    TIONS. Where the surety on a note to a bank, to whom the debtor had given a note and mortgage as indemnity, had an account to his credit in the bank for more than the amount of the debtors obligation, and he agreed with the cashier that the sum due from the debtor which had matured should be charged to his account, his action against the debtor on his indemnity paper was not prematurely brought, although he did not formally pay the same until after suit was commenced; and, even if prematurely brought its actual payment before trial would entitle the surety to. maintain the action on the filing of a supplemental petition showing that fact: nor was the action by the surety barred because payment by him of the debtors obligation was not pleaded within ten years from maturity of his indemnifying note and mortgage.

**Execution of instruments:** ACKNOWLEDGMENT: DENIAL OF GENUINENESS
3    OF SIGNATURE. Upon the acknowledgment of the execution of an instrument before a notary it becomes immaterial whether the signature was affixed by the grantor personally or by another; so that denial merely of the genuineness of the signature is insufficient to overcome the weight to be given the certificate.

*Appeal from Dallas District Court.—Hon. Edmund*
Nichols, Judge.

Tuesday, February 9, 1909.

This is an action to foreclose a mortgage purporting to
have been given to secure a note for $500. The considera-
tion for the note and mortgage was that the plaintiff be-
came surety for the defendant H. O. Clement for a like
amount. There was a decree for the plaintiff against. both
defendants, except that no personal judgment was entered
against defendant M. A. Clement. The defendants appeal.
—*Affirmed.*

*White & Clarke,* for appellants.

*D. H. Miller* and *R. S. Barr,* for appellee.

Evans, C. J.—The note and mortgage sued on bear
date of July 9, 1897. They purport to have been executed
by both defendants, who are husband and wife. The note
was drawn in ordinary form, and by its terms became pay-
able in ninety days from its date. The real consideration,
however, for the note and mortgage was that the plaintiff
became surety for the defendant H. O. Clement. At the
time of this transaction Clement was engaged in the busi-
ness of buying and shipping stock. He maintained an open
account at the Bank of Minburn, checking thereon for the
payment of stock purchased, and depositing therein the pro-
ceeds of stock sold. We infer from the record that he was
operating without capital, relying upon the proceeds of his
sales to meet the checks issued for his purchases. To se-
cure itself against loss by his overdrafts the bank required
him to deposit with it as security a promissory note for
$500, to be signed by himself and a surety. The plaintiff
became such surety, and Clement carried on his business

under this arrangement. This surety note was extended from time to time until January, 1901. At this time Clement's account at the bank was overdrawn nearly to the full amount of $500, and Clement was unable to pay. For the purpose of obtaining funds to pay this overdraft a new note was executed for a like amount to the Bank of Dallas Center, and the plaintiff became surety on this note in lieu of the note originally given to the Bank of Minburn. With the proceeds of this note the overdraft account of Clement at the bank of Minburn was paid. The second note was extended from year to year until June 14, 1906. On this date another note for a like amount was executed by the same parties to the Bank of Minburn, for the purpose of obtaining money to pay the note at Dallas Center. The last note matured June 14, 1907. At this time the bank called upon the plaintiff surety to pay the same. The plaintiff at that time had an open account to his credit at such bank for more than the amount of the note. He orally directed the cashier to charge the amount thereof to his account, which the cashier orally agreed to do. This suit was begun on June 29, 1907. The plaintiff did not actually issue a check on his account for the payment of the note until September 26, 1907, nor was the note formally canceled by the bank until such date. The plaintiff first pleaded such formal payment in his reply filed September 27, 1907. A demurrer to his reply being sustained, he set up the same matter in an amended and supplemental petition filed November 18, 1907. The points relied upon by the defense may be stated briefly as follows: (1) That the suretyship indemnified by the mortgage terminated in 1901, when the overdraft account was paid at the Bank of Minburn, and that the mortgage was thereby discharged: (2) that plaintiff's only cause of action was set up in a supplemental petition, filed November 18, 1907, and that under the terms of the note and mortgage the statute of limitations had fully run before such date; (3) that no cause of action

accrued to the plaintiff until September 26, 1907, being the date on which he formally paid the debt for which he became surety, and that his suit was therefore prematurely brought and could not be saved by the filing of a supplemental petition; (4) that the defendant M. A. Clement never signed either the note or the mortgage, and that her purported signatures thereto are forgeries, and that such note and mortgage were fraudulently altered by the plaintiff. The whole controversy in the case turns about these points of defense, and we will consider them *seriatim*.

I. In his original petition the plaintiff declared upon his note and mortgage according to their terms. The consideration for such note and mortgage was developed by the later pleadings. There is no dispute in the

1. SURETYSHIP: indemnity: extinguishment.

evidence but what they were given to the plaintiff to indemnify against loss by reason of his suretyship for Clement. Clement himself testifies: "It was for any purpose that might come up. He might sustain a loss that might be good there against me. I will admit that they were given to protect Mr. Gribben, but it was not talked or understood at the time." The parties differ in their testimony in this respect, that the plaintiff claims that he received the note and mortgage at the time of their date and at the time he signed as surety. Clement testifies that he voluntarily gave the note and mortgage to the plaintiff some time subsequently. We think the contention of the plaintiff must be accepted in this respect. Counsel for appellants contend that when the overdraft was paid in 1901, and the $500 note upon which plaintiff was surety was surrendered, the function of the security held by the plaintiff was fully performed, that his suretyship had terminated, and that he had sustained no loss by reason thereof. This argument rests upon the letter rather than upon the spirit. If Clement had paid his overdraft at the Bank of Minburn, and thus released the plaintiff from his suretyship, then doubtless appellant's position would be sound,

even though the plaintiff had afterwards voluntarily entered into another suretyship for a like amount. But in this case it was not so. Plaintiff was able to terminate his liability as surety on the first note only by becoming surety on another note, the proceeds of which should pay the first note. This only changed the form of his suretyship. Its substantial identity was not changed. To hold otherwise would be exceedingly technical. We hold, therefore, that the suretyship of the plaintiff on the successive notes throughout the period of ten years was a continuing suretyship. The mortgage, having been given as surety against any loss which the plaintiff might suffer, thereby continued as long as the suretyship. It is well established in this State that no change of form of the debt originally secured by mortgage will release the mortgage so long as the identity of the debt can be traced. *Chase v. Abbott,* 20 Iowa, 154; *Heively v. Matteson,* 54 Iowa, 505; *Port v. Robbins,* 35 Iowa, 208. In the case last cited a note secured by mortgage was surrendered, and in lieu thereof a new note with surety was accepted. It was held that the surety was entitled to the security of the original mortgage. If we were to hold otherwise as to the continuance of the suretyship, it would hardly avail the defendants. In such case it would logically follow that plaintiff's cause of action accrued in January, 1901. Plaintiff's liability on the surety note at that time became absolute. The defendant was unable to pay the overdraft. The money to pay it could only be procured upon the credit of the plaintiff. The plaintiff's rights and remedy in such a case were not confined to those that are implied by the law of suretyship. In this case the mortgage and note were an express promise to pay, and it would be competent for him to show in a court of equity the liability he had incurred in order to discharge the suretyship.

II. We will consider together the second and third points of the defense. The one is that the statute of limitations had run before plaintiff set up his cause of action in

a supplemental petition.  The other is that his cause of
action had not accrued until after he com-
menced his suit.  These two propositions are
not consistent, and one or the other, or both,
must necessarily be fallacious.  If plaintiff's
cause of action had not accrued until September 26, 1907,
then the statute of limitations did not begin to run until
such time.  If the statute of limitations had fully run at
the expiration of ten years after the date of the maturity
of the note according to its terms, namely, October 9, 1897,
it must be because the plaintiff was entitled to maintain an
action upon the note and mortgage in accordance with their
express terms.  On that theory it would be incumbent upon
the defendants to plead the fact relating to suretyship as
defensive matter.  This theory will not avail the defendants,
because the plaintiff did commence his suit in this form
on the 29th day of June, 1907.  If it was necessary for
the plaintiff to set up, not only his note and mortgage, but
to plead the facts in relation to suretyship and to aver pay-
ment, then his cause of action did not accrue until such
averment could be made, and the statute of limitations would
not commence to run until a cause of action accrued.  On
either theory the plea of the statute of limitations is un-
tenable.

2. SAME: action
by surety:
when not pre-
maturely
bought:
limitations.

Was the suit prematurely brought?  And if so, were
the defendants entitled to a dismissal thereof on that ac-
count?  As already indicated, the plaintiff did not draw his
check for the payment of the note until September 26,
1907, although, as between him and the bank, it was
deemed as paid by him and to be charged against his ac-
count as of the date it matured.  No interest was charged
or claimed by the bank after June 14th.  This arrange-
ment between the plaintiff and the bank was binding upon
each of them.  As between them it would be deemed a
payment in a court of equity.  Inasmuch as the arrange-
ment was actually carried out later, and the note surren-

dered to the plaintiff long before the trial of this cause, defendant could not be prejudiced thereby. He does not claim that he was prejudiced. We would not therefore feel warranted in holding that the commencement of plaintiff's action was premature. If we should so hold, we do not think that such fact would entitle the defendant to a dismissal of the action. The old rule which required an action to be abated, merely because prematurely brought, has been borne down by the trend of modern decisions. Under the later decisions, if the plaintiff's cause of action is complete and mature before it comes to a hearing, he will ordinarily be permitted to try it out on its merits. If the action was prematurely brought, the court has full power to impose proper terms upon the plaintiff for the full protection of the defendant. The usual terms imposed are that plaintiff be required to pay all costs incurred prior to the maturity of his cause of action. If other terms ought in justice to be imposed, the court has plenary power in the matter. The rule is to permit a supplemental petition to be filed and to allow the case to proceed. See *Little v. Pottawattamie County,* 127 Iowa, 381; *Bloom v. Insurance Company,* 94 Iowa, 359. *Dennison v. Soper,* 33 Iowa, 183, was a case prematurely brought by a surety as plaintiff before payment of the note, and his action was ordered dismissed, although he had paid the note before the trial. In that case, however, the suit was brought, not only before the surety had paid the note, but seven months before the note matured. The ground of the dismissal was that the only liability of the defendant to the plaintiff was one implied by the law of suretyship, and under such law no liability existed until after maturity and payment of the surety debt. Even upon the state of facts existing in that case, we doubt whether it can be regarded as entirely consistent with the holding in later decisions. In the case of *Zalesky v. Home Insurance Company,* 102 Iowa, 621, the reasoning of the court was

grounded upon the express prohibition of the statute. The facts in that case were exceptional in that respect. As distinguishing the *Dennison* case from the one at bar it should also be noted that a distinction is recognized by the authorities between a case where the plaintiff surety has no other right or remedy than those arising by implication of law out of the suretyship relation and a case where the plaintiff has been expressly indemnified by a written contract. In the latter case the surety is entitled. to avail himself of the express terms of the written contract of indemnity, and he may thereby obtain an enlarged: remedy. For a collation of cases upon this subject, see 27 Cyc. 1067, 1068, and cases therein cited; 27 Am. & Eng. Enc. 474, and cases therein cited. · In such a case it has been held that a surety mortgagee may foreclose his mortgage before paying his principal's debt, and obtain a decree ordering the proceeds of the foreclosure to be applied upon the debt. *Meeker v. Waldron*, 62 Neb. 689 (87 N. W. 539). The effect of such a decree would be to treat the mortgage, at the election of 'the surety, as security for the original debt. From any view of the case at bar, we must hold that plaintiff's case was neither barred, by the statute of limitations nor prematurely brought.

III. It is earnestly contended that the purported signatures of the defendant M. A. Clement to the note and mortgage are forgeries. The testimony of Mrs. Clement on this question consists of the following, and no more: "The signature M. A. Clement to this note, Exhibit A, is not my genuine signature. The signature M. A. Clement to this mortgage, Exhibit B, is not my signature." This testimony was not, contradicted by any other oral testimony. One Boyd also testified that in his opinion the signatures were not the signatures of this defendant. It is said in argument that the court found the signature on the note was a forgery. From such finding it is argued·

3. EXECUTION OF INSTRUMENTS: acknowledgment: denial of genuineness of signature.

that there was necessarily a fraudulent alteration of the note on the part of the plaintiff, and that therefore his whole case should fail. We are not able to determine from the record that the lower court definitely made such a finding as here stated. There is no statement in the record to that effect. The court rendered no personal judgment against this defendant. The inference might therefore be drawn that the court found in her favor as to the alleged forgery of the signature to the note. The court, however, entered no personal judgment against either defendant on the note Exhibit A. This note did not represent a debt. It was simply a part of the form of security. The court determined the amount of the personal liability of H. O. Clement from the amount paid by plaintiff as surety in his behalf. It allowed the plaintiff 6 percent interest thereon, although the note called for 8 percent interest. It is undoubtedly true, however, that if the note, Exhibit A, was signed by the defendant M. A. Clement, it would render her subject to a personal judgment, not for the amount of the note, but for the amount of plaintiff's loss as surety. The court having failed to enter such personal judgment, it is perhaps the fair inference from the record that the court found that she did not sign the note. Does it necessarily follow that the plaintiff was guilty of a fraudulent alteration of the note so as to render it void? And does consistency require a finding that her signature to the mortgage was also a forgery? We think not. As to the alleged fraudulent alteration, we are well satisfied from the evidence that the purported signatures of Mrs. Clement were upon the note and mortgage when the plaintiff received them from her husband. If either signature was a forgery, the forgery had occurred before the instrument left the hands of the husband. As to the genuineness of the signature to the mortgage, it appears that the mortgage was duly acknowledged before one Bligh, a notary public, and had been on rec-

ord since 1901. Bligh had died before the trial was had, and no other person was found who could personally testify to the transaction. The name of Mrs. Clement was written in the body of the notarial certificate in the handwriting of Bligh. It has heretofore been held by this court that the certificate of a notary in such cases is entitled to great weight, and should not be lightly overcome. Such certification has been regarded as sufficient proof of the genuineness of the signature, not only to the mortgage, but to the note also. See *Mixer v. Bennett,* 70 Iowa, 329; *Herrick v. Musgrave,* 67 Iowa, 63; *Baily v. Landingham,* 53 Iowa, 722; *Van Orman v. McGregor,* 23 Iowa, 300; *Morris v. Sargent,* 18 Iowa, 90. The defendant denied only the genuineness of her signature. That of itself would not defeat her liability on the mortgage. She did not deny that she had appeared before a notary public and acknowledged the execution of the instrument in the manner certified to by him; and, if she had made such denial, it would not of itself necessarily be sufficient to overcome the weight of such certificate. If she acknowledged the instrument before the notary public, it was quite immaterial whether her name was put to it by her own hand or by the hand of another. It is true that the plaintiff himself did not see her sign the paper, nor is he able to produce any witness that did. He took the mortgage from her husband, assuming that the purported signature was genuine. He was doubtless imprudent in that respect. A more cautious man would have made himself certain of the genuineness of the signature in advance. But if the plaintiff had possessed such degree of prudence, he would probably not have become surety at all. It is the "man void of understanding" who "becometh surety for his neighbor." Proverbs xvii, 18. In any event the finding of the lower court is well sustained by the record.

The decree furnishes the defendants no legal ground of complaint, and it is *affirmed.*