WESTGROVE SAVINGS BANK, Appellant, v. OSA DUNLAVY et al.,
                              Appellees.

CHATTEL MORTGAGES: Priority—Inaccurate Description of Debt
1  Secured. A chattel mortgage, given to secure the mortgagee from
   liability as *surety* on certain notes of the mortgagor to a third party,
   will not be denied priority over a subsequent mortgage because the
   indebtedness sought to be secured is incorrectly described as notes
   due to the surety-mortgagee, instead of notes due to said third party.
   Especially is this true when the subsequent mortgagee had full
   knowledge of the facts attending the execution of the first mortgage.

CHATTEL MORTGAGES: Exempt Property—Nonwaiver of Exemp-
2  tion. Where the wife of a debtor did not sign a chattel mortgage,
   which covered both exempt and nonexempt property, a subsequent
   agreement, pending controversy as to priorities, that the property
   may be sold, and that the lien shall continue as to the proceeds
   "just as it now exists against the property," does not estop the
   debtor from denying the validity of the mortgage as to the exempt
   property.

*Appeal from Davis District Court.*—C. W. VERMILION, Judge.

FEBRUARY 21.

   ACTION in equity, in which plaintiff seeks to have the rights
and priorities of the parties in and to the proceeds of a sale de-
termined. The trial court held that the Steckels, interveners,
had no lien on the funds. The decree gave A. J. Bond priority
on the proceeds of sale for the amount of his debt, and also
the unpaid debt of the Moulton Bank against P. C. Bond. P.
C. Bond was given the proceeds of sale of the exempt property
and priority thereto as against plaintiff bank. The amounts of
the debts of P. C. and A. J. Bond, the Moulton Bank, plaintiff,
and the Steckels, interveners, were fixed by the decree, and the
application of the proceeds of the sale was specifically directed,
and judgments for the same were entered, as set out in the decree.
The Steckels did not agree to the sale of the mortgaged property,
and the court denied their claim for a lien on the proceeds of

the sale. The court, as to them, simply fixed the amount of the indebtedness of P. C. Bond to them. Neither P. C. Bond nor the Steckels, interveners, appeal, and the adjustment of the amount of the indebtedness of P. C. Bond to the Steckels is not questioned by appellant. The plaintiff appeals. The facts will be more fully stated in the opinion.—*Affirmed.*

*Payne & Goodson,* for appellant.

*E. Rominger, George F. Heindel,* and *Henry C. Taylor,* for appellees.

PRESTON, J.—P. C. Bond, son of A. J. Bond, was living on a farm which he had rented from Steckel & Son, and from his father. He had become indebted to the Moulton State Savings Bank, which, wishing to have security for the indebtedness, asked the father to sign the notes, and talked about a mortgage on the live stock, by P. C. and wife. After some negotiations, the father, A. J., proposed to his son that he would sign, as surety, for the amount due the bank, which was $4,300, if the son would give him a mortgage, as security as such surety, and for an indebtedness to the father from the son of $1,200, evidenced by a note. This understanding between P. C. and A. J. was known by the officers of the Moulton bank. The agreement was made, and pursuant thereto, P. C. and wife, Joda, executed to A. J. the mortgage dated December 18, 1915. The consideration therein expressed is $5,500. The property mortgaged was 9 head of horses and 2 mules, 98 cattle, 425 sheep, and wool therefrom. The condition of the mortgage is: "If the said P. C. Bond shall pay the said A. J. Bond, his heirs, assigns, etc., his three promissory notes, dated January 31, 1914, December 16, 1915, described as follows: One for $1,200, payable January 31, 1914; one for $2,300, payable June 16, 1916; one for $2,000, payable September 16, 1916, with interest," etc.

The mortgage provides further:

"This mortgage is also expressly made to secure any claims held by mortgagee against mortgagors, or either of them, or any future loans, advances, or indebtedness accruing from said grantors, or either of them, and assigns to said grantee or his

assigns or his beneficiaries, or any claims that may come into the hands of said mortgagee or his assigns, by purchase, or otherwise, against said mortgagors, or either of them, and to be security for attorneys' fees, etc.''

Plaintiff's mortgage is dated September 19, 1916, to secure a note of $1,850, both note and mortgage being signed by P. C. Bond, without having his wife join therein. Some of the property is covered by both mortgages, but more is included in plaintiff's mortgage, and the exempt property is included in plaintiff's mortgage. The property is described with somewhat more particularity in plaintiff's mortgage. Plaintiff placed its mortgage with defendant Dunlavy, and directed him to take possession of the property described in its mortgage, for the purpose of selling it, and to foreclose the mortgage. Dunlavy took possession of the property. At about that time, and on November 16, 1916, a written agreement was entered into, signed by A. J. Bond, the cashier of plaintiff bank, Joda F. Bond, and P. C. Bond, which recites that P. C. Bond is indebted to A. J. and the Moulton bank, on which note to the Moulton bank A. J. is surety, and indebted to the plaintiff; that the amounts owed to these parties are secured by mortgages upon certain chattel property owned by P. C. Bond; that A. J. Bond had commenced proceedings to foreclose his mortgage, and that the sheriff has taken possession of the property, under said foreclosure proceedings. It was agreed, as the writing recites, by and between the parties who hold mortgages on said property that all property covered by said mortgages may be sold at public sale by the sheriff, November 29, 1916; that the proceeds be held by the clerk of the sale until the parties have adjusted priorities and claims, and determined the amount due each party secured by the mortgages, and then the proceeds to be paid to said parties according to their priority and claims to the proceeds; that the mortgage claims shall remain a lien upon the proceeds, the same as it then existed against the property. The real purpose of the mortgage to A. J. was to secure the two notes of $2,000 and $2,300 due the Moulton bank, and, of course, the $1,200 indebtedness of P. C. to A. J. Bond. The cashier of plaintiff bank had talked with P. C. about the amount, and the cashier was advised by P. C. of the amount due the Moulton bank, and the amount due P. C.'s father; knew

that the mortgage given by P. C. to his father was to secure the $2,000 note and the $2,300 note given to the Moulton bank; knew this from statements of others, and from the fact that the amounts were given in a prior mortgage to plaintiff bank by P. C., which prior mortgage had been satisfied; so that, if the evidence outside of the mortgage itself is considered, plaintiff was informed of the true situation, and knew that this money had been borrowed from the Moulton bank, although the mortgage was given to A. J. Bond, to secure him. In any event, plaintiff knew the amounts. The mortgage itself gives the amounts of the three notes, which include the two notes to the Moulton bank, so far as amounts are concerned. P. C. Bond, as the head of a family, claims some of the property as exempt, and that, as to such, he is not bound, because his wife did not sign the mortgage. On the other hand, it is claimed by appellant that the wife, by signing the agreement to sell, ratified the mortgage, so that she and her husband are bound, even as to the exempt property. We take it that the only purpose of the agreement to sell was that the proceeds should stand in the place of the property until the rights of the parties were determined. Nowhere in the agreement to sell is it stated that the exemption is waived. Though quite a large number of cases are cited by both sides, bearing directly or indirectly upon points suggested in argument, and related matters, there are really but two questions presented, and they are: First, in regard to the exempt property; and second, whether the mortgage to A. J. Bond is invalid as to the $2,000 note and the $2,300 note, so as to let plaintiff in ahead of them, and after the $1,200 note, the indebtedness to A. J. from P. C. Bond. We do not understand appellant to contend that its mortgage is ahead as to the $1,200. We do not understand any of the parties to contend that other provisions of the decree should be disturbed, if the determination of the trial court on the two propositions suggested be affirmed. We shall take up first the matter as to the description in the mortgage of the two larger notes, which, we take it, is the more important question.

1. Appellant contends that there is a distinction between an uncertain description of the notes and a false one, and that one which is false vitiates the mortgage; that in this case there

1. CHATTEL
MORTGAGES:
priority: in-
accurate descrip-
tion of debt
secured.

was no $2,000 note or $2,300 note owed or given by P. C. Bond to his father. They say, too, that the description of the debt should be reasonably certain, to preclude the parties from substituting other debts from those described, and they contend that the surety must have actually paid the debt and damage sustained by him before he can recover. They say, too, that parol evidence was inadmissible on the subject. Cases are cited on these different propositions, but the cases, or some of them, arise under different states of facts. It may be true that A. J. Bond could not recover against P. C. except after payment of the two notes of the Moulton bank. But the case is in equity, to determine priorities and equities of all the parties, and the trial court by its decree provided that the unpaid debt to the Moulton bank should be paid to it out of the proceeds of the sale. As we understand the record, the Moulton bank sought to intervene after the case was tried; but, since its interests were protected and its debt paid, the court dismissed the petition on motion. No injury was done plaintiff or anyone else, since it knew all the time the amounts covered by A. J. Bond's prior mortgage. *Bigelow v. Capen,* 145 Mass. 270 (13 N. E. 896), is a case quite in point on the main proposition, although in that case there seems to have been a mistake in the date of the notes; but that would have no reference to the amount. The Supreme Court of Massachusetts there said:

"It was competent for the plaintiff to show, as he did, by evidence, that, at the date of the execution of the mortgage, on October 1, 1885, the liability intended and understood to be secured by the mortgage was that on the then outstanding indorsed notes, and that there was no other liability to the plaintiff, the $1,000 mentioned in the condition being the amount of the two $500 indorsed notes. It was, therefore, a mistake, and an erroneous description of the notes intended to be secured, to state them as of the date of October 27, 1884, arising probably from the fact that the transactions between the plaintiff and Burleigh, the mortgagor, then commenced; but this would not invalidate the security, when it was shown that the liability of the plaintiff originated with them, and that the later notes were merely a substitution. Nor would it invalidate the plaintiff's

security that the obligation of Burleigh was one to indemnify him for indorsing, rather than one to pay him the notes then outstanding. The plaintiff would, it is true, have no demand against Burleigh except after payment of them by himself. The plaintiff was the promisee of the notes, and it was the duty of Burleigh to pay them. If in form it is stated in the mortgage that Burleigh agrees to pay the plaintiff the notes, rather than to indemnify him against being compelled to pay them, the real character of the transaction will, as between the parties, be regarded. Nor is any injury done to third persons. They are informed of the exact amount of the claim of the plaintiff upon the property of his and their debtor, even if such claim is not described with entire accuracy."

In *Magirl v. Magirl*, 89 Iowa 342, 345, the only Iowa case cited, or that we are able to find on this subject, it was said:

"It is contended that the description of the debt was so indefinite as not to put creditors upon inquiry. We have already set out the conditions of the mortgage in this respect. It may be conceded that the better and safer practice is to specifically set out or to describe the indebtedness sought to be secured; yet the failure to do so does not of necessity render the mortgage of no effect as to creditors of the mortgagor. As is said by Dewey, J., in *Henshaw v. Sumner*, 23 Pick. 446, the use of a chattel mortgage 'as indemnity for liabilities as sureties and indorsers must necessarily exclude the idea of great precision in the exact amount of the incumbrance being made apparent on the face of the mortgage. There must be a sufficient general description to embrace the demands and liabilities intended to be secured, and to put the person examining the record upon inquiry, and to direct him to the proper source for more minute and particular information of the amount of the incumbrance'."

There are numerous other cases on the subject, but we shall not review them. See *Honaker v. Vesey*, 57 Neb. 413 (77 N. W. 1100, 1101); *Lierman v. O'Hara*, 153 Wis. 140 (140 N. W. 1057); *Warren v. His Creditors*, 3 Wash. 48 (28 Pac. 257); *Meeker v. Waldron*, 62 Neb. 689 (87 N. W. 539); *Richards v. Yoder*, 10 Neb. 429 (6 N. W. 629); *Pendery v. Allen*, 50 Ohio St. 121 (33 N. E. 716). The *Meeker* case, supra, cites *Cassidy v. Woodward*, 77 Iowa 354, as holding that, under the statute,

the mortgagee is a trustee for those to whom the debt is due, and may sue thereon in his own name. See, also, *Hunter v. Porter,* 141 Iowa 500, as holding that courts of equity will permit a surety to foreclose a mortgage given for his security, and to apply the proceeds upon the payment of his principal debt. This case, in turn, cites the *Meeker* case.

It should be stated again, perhaps, that, under the written agreement to sell, before set out, A. J. Bond, the mortgagee, entered into the agreement for himself and the Moulton Savings Bank. The agreement itself so states.

2. As said, the foregoing is the principal point in the case, and we shall notice but briefly the less important one as to the exempt property. The court withdrew $827.50 of the proceeds of the sale, and turned it over to P. C. Bond, as representing exempt property. This was done, as we understand it, as against the plaintiff's mortgage, for the reason that P. C. Bond's wife had not signed plaintiff's mortgage. She did sign the first mortgage,—that is, the one to A. J. The court held that, under the evidence, the property claimed was exempt, and held that, where a debtor's exempt and nonexempt property is covered by a mortgage, his right to have the latter exhausted first is superior to any right of the holder of a second mortgage of nonexempt property to have the exempt property first applied on the first mortgage. We think the court was right in thus holding. As to the claim that P. C. Bond and his wife, Joda, waived any claim of exemptions, and that they were estopped from asserting such a claim to any of the proceeds of the sale, because of the agreement before set out, the court held that, since the agreement expressly provided that "the mortgage claims shall remain a lien upon the proceeds from the sale, just the same as if it now exists against the property," the agreement was not intended, nor did it have the effect, to enlarge the rights of the mortgagees by extending the liens to other property, but merely preserved the liens they had on the property, as against the proceeds. In this we concur.

*2. CHATTEL MORTGAGES: exempt property: nonwaiver of exemption.*

We reach the conclusion that the trial court rightly decided the case, and its judgment and the decree are—*Affirmed.*

EVANS, C. J., WEAVER and DE GRAFF, JJ., concur.