Whittier National Trust & Savings Bank et al., Appellees, v. Raymond Smith et al., Appellants.

No. 41192.

March 15, 1932.

172

Carl P. Knox and Dan J. Gallery, for appellees Whittier National Trust & Sav. Bank and Lois Hoskins.

C. E. Smith, for appellants, Raymond Smith & Grace Smith.

C. A. Robbins, Attorney pro se, appellee.

Carr, Cox, Evans & Riley, for Iowa Packing Co., appellee.

John T. Stark, Trustee in Bankruptcy, pro se.

ALBERT, J.—To reach a fair understanding of the questions involved, a history of the facts in this case, as shown by the record, is necessary.

Raymond Smith and Grace Smith, husband and wife, were the owners of and conducted a farm in Madison county which was subject to a mortgage. Raymond was indebted for borrowed money to R. G. Hoskins in the sum of $600.00 and to Lois Hoskins in the sum of $2,000.00. Lois was in California and her father, R. G. Hoskins, was looking after her business in Iowa. Hoskins was pressing Raymond Smith for security on these debts and on August 29, 1930, a chattel mortgage was executed by the Smiths on certain personal property, a part of which is involved in this litigation. This mortgage covered two notes executed at the same time: one for $2,717.00, which represented the two debts above referred to owing by Raymond Smith to Lois and R. G. Hoskins; and the second note for $5,000.00, making a total consideration, as specified in said chattel mortgage, of $7,717.00.

The circumstances under which this chattel mortgage was executed are one of the bones of contention in this case. The Smiths claimed,—and the Hoskins do not deny,—that this $5,000 note was made under the following conditions: Raymond Smith was in such position that if he did not have ready money he would be unable to continue his farming operations, and Grace Smith, his wife, who was at the time in no way indebted to the Hoskins, was insisting that she would not sign said chattel mortgage unless the Hoskins would agree to furnish $5,000 to the Smiths for the purpose of carrying on future farming operations; and it is fully established by the record that it was only on the promise and agreement of Hoskins to furnish this $5,000 that Grace Smith signed this chattel mortgage, and the $5,000

to be so advanced was represented by the $5,000 note above referred to. In fact, the Hoskins do not deny this claim of the Smiths' that these were the circumstances under which Grace Smith signed this chattel mortgage.

Within a few days after the execution of this mortgage and note, the Smiths went to Hoskins to procure some money under the above agreement. R. G. Hoskins said he had no money for them and Lois had none. Later a written demand was served on Hoskins to advance this $5,000, or a part thereof, for the needs of the Smiths. This demand was not met. Of what validity, therefore, is this chattel mortgage as against Grace Smith?

As above stated, on November 3, 1930, the Smiths made their second demand on Hoskins for an advancement of a sum of money under the agreement that $5,000 was to be advanced to them. The Hoskins did not respond to this demand; and on November 15, 1930, the Smiths filed petitions in bankruptcy and later were adjudged bankrupts, and on December 3d following, the bankruptcy court set off to them certain property as exempt, among which is the property in controversy herein. As we understand it, part of the property covered by the Hoskins's chattel mortgage was taken under a prior chattel mortgage, and certain other parts of the same were disposed of as hereinafter explained, so that the property now in controversy is all property which was exempt.

It is the claim of the Smiths, as heretofore stated, that Grace's signature to said chattel mortgage was procured under the specific agreement that this $5,000 was to be advanced for future operations of the Smiths' farm. She owed the Hoskins nothing at the time this mortgage was executed. It is apparent so far, therefore, that in so far as she is concerned, the consideration for her execution of said chattel mortgage wholly failed, and the chattel mortgage as to her is therefore of no validity.

The evidence in the case, however, shows that in July, 1930, Raymond Smith purchased some corn from one Sulgrove in the amount of $382.00, which corn was used to feed certain stock which was taken under a chattel mortgage prior to the one in controversy herein. After the chattel mortgage was given, Sulgrove was urging Smith for payment of this debt and Smith signed a note for that amount to Sulgrove, and R. G. Hoskins

also signed said note in the name of Lois Hoskins, and the note was subsequently paid by R. G. Hoskins out of the funds of Lois Hoskins. With this transaction Grace Smith had nothing to do, nor did she sign the note to Sulgrove. As heretofore explained, the $5,000 to be advanced was to be used in the future for conducting the farming operations. It was not a part of the agreement that the same was to be used to pay outstanding obligations of Raymond Smith, nor was there any agreement that either of the Hoskins was to sign paper obligations that might be issued in the future by Raymond Smith. This claim, therefore, on the $382.00 note must be treated as a personal obligation and contract between Raymond Smith and the Hoskins, and has no effect whatever on the chattel mortgage transaction, and in no event could it affect Grace Smith's right to claim a failure of consideration and thus avoid the chattel mortgage.

She therefore stands in relation to said exempt property the same as though she had never signed this chattel mortgage, and it must therefore be treated, in law, as though it did not bear her signature. If the chattel mortgage is therefore so treated, the mortgage as a whole is void and of no force and effect, under section 10013, Code, 1931. We have so construed the force and effect of this section in Augustine v. Gold, 188 Iowa 551; Westgrove Savings Bank v. Dunlavy, 190 Iowa 1054; National Bank v. Chapman, 212 Iowa 561.

We reach the conclusion, therefore, under the record in this case, that the district court should have held that the property in controversy herein being exempt property, the chattel mortgage was absolutely void and therefore unenforcible as against such property. The court erred in holding the same a valid instrument.

There are numerous other questions involved in the case, but in view of the conclusion we reach, they need no further attention at our hands.

The court should have dismissed plaintiffs' petition on the ground that under the record, the mortgage was invalid and unenforcible.

This disposition of the case also disposes of plaintiffs' crossappeal. This cross-appeal was only from that portion of the decree which denied relief against the Iowa Packing Company and C. A. Robbins for any deficiency which might remain after

it was subjected to the mortgage sale. The decree was that there was no liability on the part of the Iowa Packing Company or C. A. Robbins. It therefore follows, as to the plaintiffs' cross-appeal, the case should be affirmed.—Affirmed on plaintiffs' cross-appeal; reversed on Smiths' appeal.

WAGNER, C. J., and STEVENS, FAVILLE, and MORLING, JJ., concur.